# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### No. 21-0001V
UNPUBLISHED

|  |  |
|---|---|
| SHERI ESTERS, | Chief Special Master Corcoran |
| Petitioner, | |
| v. | Filed: September 28, 2023 |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | |
| Respondent. | |

*Jimmy A. Zgheib, Zgheib Sayad, P.C., White Plains, NY, for Petitioner.*

*Julia Marter Collison, U.S. Department of Justice, Washington, DC, for Respondent.*

## RULING ON ENTITLEMENT[1]

On January 4, 2021, Sheri Esters filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act") alleging that she suffered a shoulder injury related to vaccine administration ("SIRVA") as a result of an influenza ("flu") vaccine administered on September 19, 2019. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

---

[1] Because this unpublished opinion contains a reasoned explanation for the action in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). This means the opinion will be available to anyone with access to the internet. In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

For the reasons discussed below, I find the evidence preponderates in the conclusions that Petitioner's injury and its residual effects lasted for more than six months; that Petitioner's shoulder injury would not be explained by her prior medical history; that the onset of Petitioner's shoulder pain occurred within 48 hours of vaccination; that Petitioner's pain and reduced range of motion were limited to her right shoulder; and that no other condition or abnormality is present that would explain Petitioner's symptoms. Petitioner is entitled to compensation under the Vaccine Act.

## I.   Relevant Procedural History

As noted above, the case was initiated in January 2021. More than a year later, on April 26, 2022, Respondent filed a status report stating that he was willing to entertain settlement discussions, and although they entered into discussions, no terms could be agreed upon. ECF No. 24.

Accordingly, on October 3, 2022, Respondent filed a Rule 4(c) Report disputing Petitioner's entitlement to a Vaccine Program award. ECF No. 29. Respondent argued that Petitioner did not establish that she suffered the residual effects of her injury for greater than six months (the "severity requirement"). *Id.* at 8-9. Respondent also argued that Petitioner's Table claim would fail because her symptoms did not begin within 48 hours of vaccination and her shoulder pain was not limited to her vaccinated shoulder. *Id.* at 10-11.

On January 16, 2023, Petitioner filed a Motion for a Ruling on the Record ("Motion") arguing that she has met her burden of proof for both a Table SIRVA and off-Table claim. ECF No. 32. Respondent filed his brief in reaction to Petitioner's Motion on February 27, 2023 ("Response"). ECF No. 33. He maintains that "Petitioner has demonstrated neither a Table claim nor an off-Table claim, and accordingly this case should be dismissed." *Id.* at 14. Petitioner filed her Reply on March 15, 2023. ECF No. 35.

## II.   Authority

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). A Petitioner may prevail on his or her claim if he has "sustained, or endured the significant aggravation of any illness, disability, injury, or condition" set forth in the Vaccine Injury Table (the "Table").  Section 11(c)(1)(C)(i). The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular

injuries must occur after vaccination. Section 14(a). If a claimant establishes that he has suffered a "Table Injury," causation is presumed.

Section 11(c)(1) also contains requirements concerning the type of vaccination received and where it was administered, the duration or significance of the injury, and the lack of any other award or settlement. *See* Section 11(c)(1)(A), (B), (D), and (E). With regard to duration, a petitioner must establish that she suffered the residual effects or complications of such illness, disability, injury, or condition for more than six months after the administration of the vaccine. Section 11(c)(1)(D).

Effective for petitions filed beginning on March 21, 2017, SIRVA is an injury listed on the Vaccine Injury Table. *See* Vaccine Injury Table: Qualifications and aids to interpretation ("QAI"). 42 C.F.R. § 100.3(c)(10). The criteria are as follows:

> A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following: (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection; (ii) Pain occurs within the specified time-frame; (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and (iv) No other condition or abnormality is present that would explain the patient's symptoms (e.g. NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

*Id.*

## III. Relevant Factual Evidence

I have fully reviewed the evidence, including all medical records, affidavits, and the parties' briefing. The below is a summary of the most relevant facts:

- Petitioner had a pre-vaccination medical history that includes Type 2 diabetes, obesity, cervical cancer, migraines and chronic pain in her neck, hips, back and knees. Ex. 5 at 5-28. Petitioner was prescribed hydrocodone and methocarbamol to manage her chronic pain. *Id.*; *See also* Ex. 8.

- Petitioner was administered a flu vaccine on September 19, 2019, at Kootenai Health. Ex. 2. It was injected into her right deltoid. *Id.*

- In her affidavit, signed on January 1, 2021, Petitioner avers that she "felt pain in and around the injection site in the afternoon after receiving the vaccination." Ex. 3 at 1.

- Petitioner further avers that hydrocodone and methocarbamol, prescribed for chronic lower back and knee pain, helped "to take the edge off" of the shoulder pain she experienced following receipt of the flu vaccine. Ex. 3 at 2.

- On October 16, 2019 (nearly a month post-vaccination), Petitioner presented to Idaho Pain Clinic for a monthly medication management appointment. Ex. 8 at 147-149. There is no indication that Petitioner mentioned right shoulder pain during this visit. However, in her supplemental affidavit, signed on January 16, 2023, Petitioner states that she did not mention her right shoulder pain during this appointment "because it was just a medication check-up for lower back pain and I did not find it necessary or relevant to report unrelated right shoulder pain." Ex. 23 at 1.

- On November 13, 2019, Petitioner sent an email to her attorney requesting a return call "regarding a flu shot in September 2019." Ex. 22 at 1.

- The next day - November 14, 2019 (now 56 days post-vaccination) - Petitioner presented to Idaho Pain Clinic for a medication management appointment. Ex. 8 at 150. The record documenting this visit reflects Petitioner's report of "trouble with right arm after her flu shot . . . since September." *Id.* at 151.

- Also on that same day, Petitioner presented to her primary care physician's office at Kootenai Clinic with complaints of "intermittent shooting pain down her right arm from her right shoulder down to her lower arm . . . She isn't exactly sure if the pain shoots up or down . . . She says pain radiates to her wrist." Ex. 5 at 39. Petitioner reported that the onset of her condition was "2mo ago after the flu shot." *Id.* Petitioner was referred to physical therapy and prescribed a Medrol dosepak. *Id.* at 43.

- A December 20, 2019 MRI of Petitioner's right arm revealed no abnormalities. Ex. 5 at 58.

- Petitioner presented for medication management appointments at Idaho Pain Clinic on January 9, February 5, and March 2, 2020. Ex. 8 at 156-164. The assessment portion of the medical notes all include the following language:

[Petitioner] is here for a medication management, refill, and monitoring follow up. She experiences migraines, *right upper extremity*, pain in the low back region with bilateral radicular symptoms down the lower extremities and both knees. She is currently taking hydrocodone 10-325mg up to three to four times daily #100 and methocarbamol 750mg to help manage her pain. She denies any new injuries or symptoms since her last visit.

*Id.* at 157, 160, 163 (emphasis added).

- The concluding sentences of Petitioner's January 9, 2020 assessment indicate that Petitioner "states that she also had a bone density scan done recently and that she was placed on a new medication due to this." Ex. 8 at 157.

- The concluding sentences of Petitioner's February 5, 2020 assessment indicate that Petitioner "has high blood pressure ans [sic] states she feels light headed. She has an appointment tomorrow with her primary care. She has a new primary who is Dr. Tracy Schwartzman." Ex. 8. at 160.

- The concluding sentences of Petitioner's March 2, 2020 assessment indicate that Petitioner "is stable on her current regimen and is requesting a refill at this time." Ex. 8. at 163.

- On February 6, 2020, Petitioner presented to Advanced Practice Nurse Practitioner ("NP") Tracy Schwartzman at Rockwood Clinic Family Medicine for multiple complaints, including dizziness and hypertension. Ex. 7 at 12-18. The medical record does not reflect any reports of shoulder pain.

- In her January 2023 supplemental affidavit, Petitioner states that although she reported right shoulder pain to NP Schwartzman on February 6, 2020, "she did not examine my shoulder or provide any treatment. I feel she did not know how to treat my shoulder condition and was a [sic] somewhat dismissive of my injury." Ex. 23 at 2.

- Petitioner presented to her medication management appointments virtually on March 30 and April 27, 2020 "due to COVID 19 restrictions." Ex. 8 at 165-170. The note documenting both appointments indicate that Petitioner "experiences migraines, *right upper extremity*, pain in the low back region with bilateral radicular symptoms down the lower extremities and both knees." *Id.* at 166, 169 (emphasis added).

- In her supplemental affidavit, Petitioner avers that she was unable to obtain treatment for her shoulder pain from February 2020 through August 2020 because of the COVID-19 pandemic. Ex. 23 at 2. "All medical offices were closed . . . and even after they opened, I did not seek medical treatment right away because I was afraid of getting COVID-19." *Id.*

- Petitioner also avers that personnel at "Rockwood Valley Orthopedics . . . told me I need surgery for my shoulder, and I got the impression that anything other than surgery will not be very helpful. I did not receive treatment for my shoulder from April 2020 through May 2021 because I knew I need surgery, and I was not able to proceed with surgery at that time." Ex. 23 at 2.[3]

- Petitioner attended in-person medication management appointments at Idaho Pain Clinic in May, June, July and August 2020. Ex. 8 at 171-179; 184-186. The assessment portion of the medical notes all include the following language:

  > [Petitioner] is here today for a medication management, refill, and monitoring follow up. She experiences migraines, *right upper extremity*, pain in the low back region with bilateral radicular symptoms down the lower extremities and both knees. She is currently taking hydrocodone 10-325mg up to three to four times daily #100 and methocarbamol 750mg to help manage her pain.

  *Id.* at 172, 175, 178, 185 (emphasis added).

- The concluding sentences of Petitioner's May 21, 2020 assessment indicate that "[Petitioner] denies any new injuries or symptoms since her last visit. [Petitioner] is stable on her current regimen and is requesting a refill at this time. She is requesting a refill of pain medication at this time." *Id.* at 172.

- The concluding sentences of Petitioner's June 18, 2020 assessment indicate that "she took a fall on Monday, and currently has back, bilateral leg, and neck pain. [Petitioner] is stable on her current regimen and is requesting a refill at this time. She is requesting a refill of pain medication at this time." Ex. 8 at 175.

---

[3] Petitioner's first appointment at Rockwood Valley Orthopedics ("Rockwood") did not take place until December 9, 2020. Ex. 9 at 6-17. There is no indication that right shoulder surgery was discussed at Rockwood until May 2022. *See* Ex. 17 at 14 (noting that "possible treatments including continued injection therapy, PT vs surgery" were discussed).

- The concluding sentences of Petitioner's July 16, 2020 assessment indicate that Petitioner "took a fall on Monday and currently has back, bilateral leg, and neck pain. [Petitioner] states she pulled some muscles in her low back. She went to the urgent care and they prescribed her a muscle relaxer. She is requesting Magda take over the Rx. She is requesting a refill of pain medication at this time. *Id.* at 178-179.

- The concluding sentences of Petitioner's August 17, 2020 assessment indicate that Petitioner "is stable and doing well on her current regimen. She was called in for a pill count on 8/3/20 and the count was more than expected to be remaining." *Id.* at 185.

- Petitioner presented for a virtual appointment with NP Schwartzman on May 4, 2020. Ex. 7 at 36-39. Petitioner's blood pressure and mental health diagnosis were discussed, and it was noted that she "ha[d] no other complaints." *Id.* at 37. There is no indication that Petitioner's right shoulder was discussed.

- On August 20, 2020, Petitioner returned to NP Schwartzman for an annual wellness visit. Ex. 7 at 45-57. There is no indication that Petitioner's right shoulder was discussed.

- The note documenting Petitioner's September 14, 2020 medication management appointment at Idaho Pain Clinic reflects Petitioner's report of "pain in her upper right arm for the past year." Ex. 14 at 13. Petitioner further reported that the pain started after receipt of a flu vaccine. *Id.*

- On September 23, 2020, Petitioner sent an email to NP Schwartzman stating "I wanted to send a message regarding my right shoulder pain, can we schedule a MRI to see why I'm have [sic] so much pain?" Ex. 7 at 86.

- Petitioner presented to medication management appointments at the Idaho Pain Clinic on October 12 and November 9, 2020. Ex. 14 at 15-20. These records indicate that Petitioner "experiences migraines, *right upper extremity*, pain in the low back region with bilateral radicular symptoms down the lower extremities and both knees." *Id.* at 16, 19 (emphasis added). There is no indication that Petitioner's right shoulder was discussed during these appointments.

- Petitioner underwent an MRI of her right shoulder on November 16, 2020. Ex. 7 at 118-119. The MRI revealed moderate supraspinatus tendinopathy, moderate infraspinatus tendinopathy, mild subscapularis tendinopathy, mild biceps

tendinopathy, degenerative fraying and tearing of the labrum, mild subacromial subdeltoid bursitis, moderate acromioclavicular degenerative changes, and signs of impingement syndrome. *Id.* at 119.

- On December 9, 2020, Petitioner presented to Certified Physician's Assistant ("PA") Michael Prentice at Rockwood Valley Orthopedics for an evaluation of her right shoulder. Ex. 9 at 6-17. The medical note reflects Petitioner's report of right shoulder pain that began "about one year ago." *Id.* at 8. Petitioner was assessed with a nontraumatic incomplete tear of the right rotator cuff and impingement syndrome of her right shoulder. *Id.* at 12.

- Petitioner presented to medication management appointments at the Idaho Pain Clinic on December 7, 2020 as well as on January 4 and February 1, 2021. Ex. 14 at 21-29. The notes documenting these visits indicate that Petitioner "experiences migraines and *pain in the right upper extremity*, pain in the low back region with bilateral radicular symptoms down the lower extremities and both knees." *Id.* at 22, 25, 28 (emphasis added).

- The concluding sentences of Petitioner's December 7, 2020 and February 1, 2021 assessment indicate that Petitioner "denies any new injuries or symptoms since her last visit. She is requesting a refill of pain medication at this time." *Id.* at 22, 28.

- The concluding sentences of Petitioner's January 4, 2021 assessment indicate that Petitioner "states her hydrocodone seems to be wearing off fairly quickly. She denies any new symptoms or inquiries since her last visit. She is requesting a medication refill at this time." *Id.* at 25.

- During Petitioner's February 15, 2021 presentation to PA Prentice, she underwent an ultrasound-guided steroid injection in her right shoulder. Ex. 13 at 41-47. Petitioner was diagnosed with "right shoulder pain with rotator cuff tear and bursitis." *Id.* at 43.

- On March 8, 2021, Petitioner presented to PA Prentice for right knee pain. Ex. 13 at 51. There is no indication that her right shoulder was discussed during this visit.

- Petitioner presented to the Idaho Pain Clinic on March 25, 2021 for a medication management appointment. Ex. 14 at 33-35. This record reflects that Petitioner "experiences migraines and *pain in the right upper extremity*, pain in the low back region with radicular symptoms down the lower extremities and both knees." *Id.* at 34-35 (emphasis added).

- Petitioner presented to PA Prentice on April 15, 2021 concerning her right shoulder and knee. Ex. 13 at 66-70. The medical note documenting this visit reflects Petitioner's report of "right shoulder issues." *Id.* at 66.

- The note documenting Petitioner's April 22, 2021 medication management appointment at Idaho Pain Clinic indicates that Petitioner "needs a right shoulder surgery." Ex. 14 at 39. There is no further mention of Petitioner's right shoulder.

- Petitioner returned to the Idaho Pain Clinic on July 15, 2021 for a medication management appointment. Ex. 14 at 46-48. Petitioner reported doing "a lot of weeding and [that] her shoulders are been [sic] bothering her." *Id.* at 48.

- The note documenting Petitioner's December 2021 medication management appointment at Idaho Pain Clinic reflects that Petitioner reported "chronic pain from her shoulder and needs shoulder surgery but does not want to go forward with the surgery yet." Ex. 16 at 11.

- Petitioner presented to the Idaho Pain Clinic on January 27, February 23, and March 23, 2022 for medication management appointments. Ex. 16 at 13-23. There is no indication that her right shoulder was discussed during these visits.

- On May 4, 2022, Petitioner returned to PA Prentice regarding right shoulder pain. Ex. 17 at 8-15. The note documenting this appointment indicates that possible treatments included "injected therapy, PT vs surgery." *Id.* at 14. Petitioner underwent her second steroid injection and was referred to physical therapy. *Id.* at 14.

- Petitioner underwent an initial physical therapy exam for right shoulder pain on June 2, 2022. Ex. 18 at 14-22. The record indicates that Petitioner's symptoms "started a couple years ago after a flu shot and symptoms have slowly gotten worse." *Id.* at 14. It's further noted that Petitioner "initially had some numbness . . . [she] doesn't have this anymore." *Id.*

- Petitioner participated in physical therapy on June 7, 2022. Ex. 18 at 25-29. The note documenting this session indicates that Petitioner "woke up . . . with neck/shoulder hurting and potentially slept awkwardly." *Id.* at 25.

- Petitioner completed her physical therapy on June 30, 2022 after attending four sessions. Ex. 18 at 24-36; Ex. 20 at 33-34.

- Petitioner presented to Dr. Byron Humble, an orthopedic surgeon on August 23, 2022. Ex. 19 at 22-39. The medical record documenting this visit reflects Petitioner's report of "shoulder pain since having a flu shot about [three] years ago." *Id.* at 23. Dr. Humble noted that Petitioner had "components of rotator cuff syndrome with impingement with impingement possible rotator cuff tear." *Id.* at 27.

- Petitioner presented to her primary care provider on January 17, May 25 and October 6, 2022. Ex. 21 at 428-453; 507-517; 574-587. There is no indication that Petitioner's right shoulder was discussed during these visits.

## IV.   Findings of Fact

### A.  Severity

The first issue to be resolved is whether Petitioner has demonstrated that she suffered "residual effects or complications of [the injury alleged] for more than six months after the administration of the vaccine," as required for eligibility under the Vaccine Program. Section 11(c)(1)(D)(i).

There appears to be no dispute that Petitioner received the flu vaccine on September 19, 2019, and she therefore must demonstrate by preponderant evidence that her residual symptoms continued at least through March 19, 2020. *See,* e.g*., Herren v. Sec'y of Health & Human Servs.*, No. 13-100V, 2014 WL 3889070, at *2 (Fed. Cl. Spec. Mstr. July 18, 2014); *see also Hinnefeld v. Sec'y of Health & Human Servs.*, No. 11-328V, 2012 WL 1608839, at *4-5 (Fed. Cl. Spec. Mstr. Mar. 30, 2012) (dismissing case where medical history revealed that petitioner's Guillain-Barré syndrome resolved less than two months after onset).

The record establishes that Petitioner initially sought treatment for her shoulder injury on November 14, 2019 – almost two months post-vaccination. However, Respondent argues that because Petitioner did not specifically mention her shoulder pain again until September 2020 (more than one year later) despite attending monthly medication management appointments, she is unable to meet the severity requirement. Response at 9. Respondent also argues that Petitioner has not established that any subsequent findings "are more likely related to her alleged vaccine-related shoulder injury than to any other conditions," and that the timing of Petitioner's return to treatment "suggests a primary motivation to support the litigation of her vaccine injury claim." *Id.*

Although Petitioner acknowledges not receiving "extensive" treatment for her shoulder injury prior to September 2020 (which she attributes both to the challenges presented by the COVID-19 pandemic and the ameliorative effects of hydrocodone – which had been prescribed for back pain), she disputes Respondent's contention that she did not *ever* report shoulder pain to her providers. In addition to noting that her complaints of "right upper extremity pain" were noted at each medication management appointment, she also asserts that she discussed her right shoulder pain with her primary care provider, NP Schwartzman, on at least three separate occasions. Reply at 2. Specifically, Petitioner claims that "[d]espite [her] consistent complaints of right shoulder pain, NP Schwartzman failed to document those complaints or examine her right shoulder at any of those visits." *Id.* Petitioner points to record evidence of NP Schwartzman's willingness to refer her for a right shoulder MRI as evidence of their previous discussions of her shoulder symptoms. *Id.*

Although I have previously determined that the intervention of the COVID-19 pandemic ("Pandemic") can reasonably be understood to have caused individuals to put off treatment, especially in the spring of 2020, the treatment gap in this case cannot be completely explained by this event. Petitioner did not attend any appointments concerning shoulder pain in December 2019 or in January and February of 2020 – *before* the Pandemic was declared. And although Petitioner attended her March and April 2020 medication management appointments virtually, she resumed her in-person monthly visits in May 2020 – indicating that she was willing to schedule and attend her most pressing healthcare appointments.

However, I do find it likely that Petitioner's continued use of hydrocodone contributed to her ability to withstand her shoulder pain without meaningful intervention. And I also acknowledge that Petitioner's "right upper extremity" pain was consistently noted during her monthly medication management appointments from January through August 2020. *See* Ex. 8 at 156-179; 184-186. Although Respondent asserts that these notations were included "in the auto-generated portion of the 'Assessment' field of the records," a close examination of the entries reveal that the concluding notes within this section were updated on a regular basis. *Compare* Ex. 8 at 157 *with id.* at 160, 163; Ex. 8 at 172 *with id.* at 175, 178-179, 185; Ex. 14 at 22, 28 *with id.* at 25. Therefore, I find it likely that Petitioner's shoulder issues were mentioned during these visits – even if just in passing.

Moreover, Petitioner's argument that NP Schwartzman failed to chart Petitioner's references to shoulder pain – especially given that two out of three of their appointments concerned specific concerns (hypertension and a dizziness, in one instance, and Petitioner's mental health, in another) – is persuasive. *See* Ex. 7 at 12-18, 36-39. I also

note NP Schwartzman's willingness to refer Petitioner for an MRI without examination. *See* Ex. 7 at 86. As the Court has recognized, physicians may enter information incorrectly and "typically record only a fraction of all that occurs." *Shapiro v. Sec'y of Health & Human Servs.*, 101 Fed. Cl. 532, 538 (2011) (citing *Murphy v. Sec'y of Health & Human Servs.*, 23 Cl. Ct. 726, 733 (1991)).

Thus, I find that the evidence preponderates – *just barely* – in Petitioner's favor on this issue. Petitioner should take note, however, that the existing record (which features long gaps in which treatment was not sought) speaks to a particularly mild SIRVA, and therefore that any damages allowed in this case will be more modest than other claims.

### B. Factual Findings Regarding QAI Criteria for Table SIRVA

#### 1. Prior Condition

The first QAI requirement for a Table SIRVA is lack of a history revealing problems associated with the affected shoulder which were experienced prior to vaccination and would explain the symptoms experienced after vaccination. 42 C.F.R. § 100.3(c)(10)(i).

Respondent has not contested that Petitioner has met the first requirement under the QAI for a Table SIRVA. Additionally, I do not find any evidence that Petitioner suffered a pre-vaccination history of problems that would explain her post-vaccination shoulder symptoms. Accordingly, I find that Petitioner has met the first criterion to establish a Table SIRVA.

#### 2. Onset

A petitioner alleging a SIRVA claim must also show that she experienced the first symptom or onset within 48 hours of vaccination (42 C.F.R. § 100.3(a)(XIV)(B)), and that her pain began within that same 48-hour period (42 C.F.R. § 100.3(c)(10)(ii) (QAI criteria)). Respondent argues that Petitioner has not met this criterion because "[o]ne month post-vaccination, [P]etitioner visited her pain specialist, but made no mention of shoulder pain." Report at 11. Respondent also argues that when Petitioner finally did report her shoulder pain – first to her attorney, and then to "the same pain specialist to whom she had not mentioned any shoulder pain the month prior," she did not specify a precise date of onset. *Id.*

Despite Respondent's contentions, the totality of the record supports the conclusion that Petitioner's shoulder pain most likely began within 48 hours of

vaccination. Respondent correctly notes that the medical records do not assign an exact date to the start of Petitioner's symptoms and that vague temporal references to onset in the record (e.g., "trouble with right arm *after* her flu shot . . . *since* September" (emphasis added)) allow for the possibility that onset could have occurred more than 48 hours from vaccination. However, there is no counterevidence undercutting Petitioner's contention that her pain likely began close-in-time to vaccination, and she consistently attributed her shoulder symptoms to the flu shot.

While there was an intervening medical appointment after vaccination and at which time Petitioner *could* have mentioned her pain, I do not find that it undermines a favorable onset determination. Petitioner has explained that she did not disclose her right shoulder pain during her October 16, 2019 visit to the Idaho Pain Clinic "because it was just a medication check-up . . .  and I did not find it necessary or relevant to report unrelated right shoulder pain." Ex. 23 at 1. And not long thereafter, she informed this same provider (on November 14, 2019) of her pain. Indeed, on the same date, Petitioner sought treatment from her primary care provider for her shoulder (which substantiates her claim that she did not believe this issue was relevant to the care she was receiving from the Idaho Pain Clinic), relating her symptoms to her September 2019 flu shot.

Accordingly, I find that Petitioner has met the second criterion to establish a Table SIRVA.

### 3. Scope of Pain

The third QAI requirement for a Table SIRVA requires a petitioner's pain and reduced range of motion to be "limited to the shoulder in which the intramuscular vaccine was administered." 42 C.F.R. § 100.3(c)(10)(iii). Respondent argues that Petitioner has not satisfied this criterion because "[she] initially described her pain as 'intermittent shooting pain down her right arm from her right shoulder down to her lower arm' and as radiating to her wrist." Response at 12. Respondent further argues that "in June 2022, [P]etitioner alleged right-sided neck pain and numbness concurrent with shoulder pain." *Id.* [4]

I nevertheless find that (for purposes of the Table SIRVA claim), a preponderance of the evidence supports the conclusion that Petitioner's injury was limited to her right shoulder, even if symptoms elsewhere were documented. It is true that Petitioner initially described "intermittent shooting pain" that radiated to her wrist." Ex. 5 at 39. However, Petitioner's records reveal that this was the only time she described radiating symptoms. Further, Petitioner's right shoulder was the focus of her complaints and the resulting

---

[4] Petitioner's complaint of numbness was limited to her "lateral right shoulder." Ex. 20 at 12.

diagnoses. *See*, *e.g.*, Ex. 9 at 8 (December 9, 2020 orthopedic note documenting Petitioner's complaint of right shoulder pain); Ex. 13 at 43 (February 15, 2021 orthopedic note reflecting the diagnosis of "[r]ight shoulder pain with rotator cuff tear and bursitis" and charting Petitioner's receipt of a steroid injection); Ex. 19 at 27 (August 23, 2022 orthopedic note indicating that Petitioner "does have components of rotator cuff syndrome with impingement possible rotator cuff on exam.").

I also do not find Petitioner's lone report of "neck/shoulder" pain (due to sleeping "awkwardly") fatal to her claim. I have previously recognized that the third QAI criterion does not prevent a petitioner with simultaneous areas of pain due to unrelated conditions from also meeting the Table SIRVA definition. *Rodgers v. Sec'y of Health & Hum. Servs.*, No. 18-0559, 2021 WL 4772097, at *8 and n.16 (Fed. Cl. Spec. Mstr. Sept. 9, 2021). However, Petitioner must bear in mind that unrelated conditions must be separated out from the damages attributable for a Table SIRVA. *Rodgers*, 2021 WL 47772097 at n. 16; *see also Knudsen v. Sec'y of Health & Hum. Servs.*, No. 18-1971V, 2021 WL 4448738, at *5 (Fed. Cl. Spec. Mstr. Aug. 23, 2021) ("distinguishable injuries are not an additional basis for recovery"). Rather, the focus of fact-finding for this criterion is whether pain is consistently reported with respect to the relevant shoulder, even if concurrent reports of pain elsewhere are also evident from the record. Here, the preponderance of evidence suggests that Petitioner's shoulder was her main concern – and any distinguishable injury can be differentiated in the process of calculating damages.

### 4. Other Condition or Abnormality

The last QAI criteria for a Table SIRVA states that there must be no other condition or abnormality which would explain a petitioner's current symptoms. 42 C.F.R. § 100.3(c)(10)(iv). Respondent has not contested that Petitioner meets this criterion, and there is no evidence in the record to the contrary. Thus, the record contains preponderant evidence establishing that there is no other condition or abnormality which would explain the symptoms of Petitioner's right shoulder injury.

### C. Other Table Requirements for Entitlement

Based on the above, I find that Petitioner has satisfied all requirements for a Table SIRVA and is entitled to a presumption of causation. However, even if a petitioner has satisfied the requirements of a Table injury or established causation-in-fact, he or she must also provide preponderant evidence of the additional requirements of Section 11(c). The overall record contains preponderant evidence to fulfill these additional requirements.

The record shows that Petitioner received a flu vaccine intramuscularly in her right shoulder on September 19, 2019 in Idaho. Ex. 2; Ex. 5 at 38; *see* Section 11(c)(1)(A) (requiring receipt of a covered vaccine); Section 11(c)(1)(B)(i)(I) (requiring administration within the United States or its territories). There is no evidence that Petitioner has collected a civil award for her injury. Section 11(c)(1)(E) (lack of prior civil award). Additionally, as stated above, I have found that Petitioner suffered the residual effects of her shoulder injury for more than six months. *See* Section 11(c)(1)(D)(i)(statutory six-month requirement).

Thus, based upon all of the above, Petitioner has established that she suffered a Table SIRVA. Additionally, she has satisfied all other requirements for compensation.[5] I therefore find that Petitioner is entitled to compensation in this case.

## Conclusion

Based on the entire record, I find that Petitioner has provided preponderant evidence satisfying all requirements for a Table SIRVA and the Vaccine Act's severity requirement for both Table and non-Table claims. Petitioner is entitled to compensation in this case. A subsequent order will set further proceedings towards resolving damages (and I reiterate my earlier point that this case is not one in which a large pain and suffering award is called for, and therefore Petitioner must factor in the overall mild nature of her injury in seeking damages).

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master

---

[5] Because I have found that Petitioner has demonstrated a Table injury, there is no need to address Petitioner's "causation-in-fact" allegation.